IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 2, 2016


**STATE OF TENNESSEE v. GEORGE COLEMAN**


**Appeal from the Criminal Court for Shelby County**
No. 13-01966     Chris Craft, Judge

_____


**No. W2015-00450-CCA-R3-CD  -  Filed May 27, 2016**

_____


The defendant, George Coleman, was convicted of one count of aggravated sexual battery, a Class B felony. The trial court imposed a ten-year sentence as a result of the conviction. On appeal, the defendant argues that the evidence is insufficient to sustain his conviction for aggravated sexual battery, that the trial court erred by allowing the victim's brother to testify about why he followed the victim and the defendant to the bathroom, and that the trial court erred in imposing a ten-year sentence. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Sean Muizers (at trial) and Michael E. Scholl (on appeal), Memphis, Tennessee, for the appellant, George Coleman.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Cavett Ostner, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

*Facts and Procedural History*

This case arose after a Shelby County Grand Jury indicted the defendant for one count of aggravated sexual battery. The defendant, a handyman, was sent to the home of the victim's mother by her landlord in May of 2012 to remove wallpaper and paint the bathroom. The victim, who was twelve years old at the time, lived at the home with her mother and two siblings. After he started the work on the house, the defendant asked the victim's mother if he could pay her son to help with cleanup. The victim's mother said that her son was too busy. The defendant then asked if the victim could perform the cleanup work for $50. The victim's mother agreed. The victim recalled that the defendant worked on the bathroom for about two months. The defendant offered to pay her to clean up after he finished his work. She generally waited until the defendant left the house to clean the bathroom.

On June 23, 2012, the defendant called the victim's mother to see if he could come over to work on the house. When the defendant first came over around 8:00 a.m., the victim's mother was not home. The victim was at the house with her older brother, her younger sister, and a friend of her mother's. The victim let the defendant in the house, and they worked on the bathrooms together. The victim would "knock the dust off the walls, so that [the defendant] could smooth it down and he would be finished." At one point, they took a break, sat outside, and drank a Gatorade. The victim was talking on the phone to her brother's friend. The friend was planning on coming over the house later on that day. The victim testified that the defendant told her "something that made [her] very uncomfortable." The defendant told her:

> [H]e was going to rent the house across the street and add a garage on to it so that I come over there at night and he asked who was the dude that was in there for my brother. I told him that it was for my brother and he told me not to give his hugs away and he was just being weird with it, just saying, like, when he said don't give your hugs away and I was like, that is kind of weird, why would you say that.

Shortly thereafter, the victim's mother pulled up to the house. The defendant left the house around 11:00 a.m. When he left, the victim told her brother and his friend about the things the defendant said to her. The victim's brother testified that the victim told him that the defendant made her feel uncomfortable. He explained that he had a "vibe about him, because he was calling her Sweet Pea and calling her just names." She asked them to follow her into the bathroom when the defendant returned that afternoon.

The victim testified that, the defendant returned to the house around 1:00 or 2:00 p.m. that afternoon. She was in her bedroom with her brother and his friend. The victim let the defendant in the house. He said, "come on Sweet Pea" and walked toward the back of the house to the bathroom. The victim's mother, who was lying on the couch in the den, was not visible to the defendant. The victim "put her hand behind her back to signal [her] brother to come with [her]." Her brother followed her to the back bathroom near her mother's bedroom. All three of them were standing outside the bathroom when the defendant told the victim she left dust in the window of the bathroom. The victim walked in to the bathroom, and the defendant "closed the door in [her] brother's face." At that point, the defendant "squeezed" the victim's breasts with both hands and "made a grunting sound." The victim opened the door, and the defendant "grabbed" her hand. He placed money in her hand and hugged her and squeezed her breast. The defendant also "started to squeeze" the victim's "butt with both of his hands" and was making "grunting" noises. The victim went into the room with her brother and his friend and told them what happened. They walked with her through the house, and the victim told her mother when she thought the defendant was gone. The victim's mother called the police. A few days later, the victim was taken to the Children's Advocacy Center.

At trial, the defendant testified that he remodeled houses for a living and was sent to the victim's house by the landlord to work on the hall bathroom and the master bathroom. He explained that, when he was stripping the wallpaper in the bathroom, he was often interrupted by the "little baby" and puppy that lived at the house. The defendant offered to pay one of the other children to help clean up the mess.

The last day he was at the house working, the defendant had to touch up a few places on the wall in the back bathroom. He was at the house for a short period of time before he went outside to wash his tools. At this time, the victim's mother drove up to the house. The victim was outside talking to the defendant. He gave the victim a Gatorade. The defendant asked the mother who got the payment for the cleaning of the bathrooms. The defendant stated that he gave the victim the money at that point and left. He testified that he did not return to the house. Additionally, the defendant claimed that the victim never actually helped him in the bathroom while he was working. The defendant also denied touching, fondling, or putting his hands on the victim.

The jury found the defendant guilty of aggravated sexual battery as stated in the indictment. After a sentencing hearing, the trial court sentenced the defendant to ten years in incarceration. The defendant filed a motion for new trial, which the trial court denied. He filed a timely notice of appeal, and we will now consider his claims.

*Analysis*
*I. Sufficiency of the Evidence*

The defendant argues that the evidence was insufficient to support the conviction for aggravated sexual battery. He insists that there are serious "credibility concerns" with the victim's testimony at trial because her testimony was inconsistent. Additionally, he argues that there is no evidence to support the victim's "story."

When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[O]n appeal, the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *Dorantes*, 331 S.W.3d at 379 (internal quotation omitted). It is the trier of fact who resolves all questions of witness credibility, the weight and value of the evidence, as well as all factual issues raised by the evidence. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Reviewing courts should neither re-weigh the evidence nor substitute their own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003).

The trial court's approval of the jury's verdict accredits the State's witnesses and resolves all conflicts in the evidence in the State's favor. *State v. Moats*, 906 S.W.2d 431, 433-34 (Tenn. 1995). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Thacker*, 164 S.W.3d 208, 221 (Tenn. 2005). These rules apply whether the verdict is predicated upon direct evidence, circumstantial evidence, or a combination of both. *Dorantes*, 331 S.W.3d at 379. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *Id.* at 381.

Aggravated sexual battery is unlawful sexual contact with a victim by the defendant where the victim is less than thirteen years of age. T.C.A. § 39-13-504(a)(4). "Sexual contact" is defined as including "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." *Id.* § 39-13-501(6). "'Intimate

parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." *Id.* § 39-13-501(2).

Viewing the evidence in a light most favorable to the State, the victim's testimony established that the defendant was alone with the twelve-year-old victim in the bathroom where he used both hands to squeeze her breasts, hugged her, grabbed her buttocks, and made a "grunting sound." The defendant denied the accusations and, on appeal, challenges the credibility of the victim and her brother. However, the credibility of the witnesses was a question for the jury. There was sufficient evidence from which a trier of fact could find that the defendant had unlawful sexual contact with the victim where the victim was less than thirteen years of age. No corroboration of the victim's testimony is required. *State v. Collier*, 411 S.W.3d 886, 889-90 (Tenn. 2013). We conclude that the defendant is not entitled to any relief.

## II. *Testimony of the Victim's Brother*

The defendant next argues that the trial court committed plain error by allowing the victim's brother to testify that he followed the victim and the defendant to the bathroom because the victim told him that the defendant made her uncomfortable. Specifically, the defendant insists that the testimony was both irrelevant and prejudicial.

As the State correctly points out, the defendant did not make any contemporaneous objections during the testimony, and he did not raise this issue in his motion for new trial. Normally, the failure to lodge a contemporaneous objection at trial results in a waiver on appeal of the issue of improper testimony. *See* Tenn. R. App. P. 36(a). However, an error which has affected a substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do justice. *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "Plain error," or "fundamental error," is recognized under Tennessee Rule of Appellate Procedure 36(b). In order to determine whether an error rose to the level of "plain error," this court must consider five factors: "'(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Complete consideration of all five factors is unnecessary if at least one is absent. *Id.* at 283. Furthermore, the plain error must be such that it probably changed the outcome of the trial. *Adkisson*, 899 S.W.2d at 642.

In this case, the defendant has failed to show that he did not waive the issue for tactical reasons. Moreover, the defendant has failed to establish that any clear and

unequivocal rule of law was broken. He argues that it was error for the victim's brother to testify that he followed the defendant and the victim toward the bathroom after the victim told him that the defendant gave her a strange "vibe" because the testimony was not relevant. We disagree. Although potentially prejudicial, the testimony was clearly relevant to explain the circumstances surrounding the offense. It was offered to show that the defendant and the victim were alone together in the bathroom and that the victim's brother followed them to the bathroom before the defendant shut the door. Because he has failed to show all five factors necessary for plain error review, the defendant is not entitled to relief.

### III. Sentencing

Lastly, the defendant challenges his sentence. Specifically, he argues that the trial court erred by failing to sentence him to the minimum in the range for the conviction and enhancing his sentence for previous criminal convictions and violating a position of trust. Additionally, he complains that the trial court failed to mitigate his sentence because his conduct neither caused nor threatened serious bodily injury.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute." *Id.*

After the trial court establishes the appropriate range of the sentence, the court must consider the following factors to determine the specific length of the sentence: (1) the evidence, if any, received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the

defendant wishes to make in his own behalf about sentencing. T.C.A. § 40-35-210(a), (b)(1)-(7).

The defendant was sentenced as a Range I, standard offender to a sentence of ten years. Aggravated sexual battery is a class B felony. T.C.A. § 39-13-504(b). As a Range I offender, the sentencing range for a class B felony is eight to twelve years. T.C.A. § 40-35-112(a)(2). The defendant contends that the trial court incorrectly applied enhancement factor one , "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," because there was no proof that he had any prior felonies. T.C.A. 40-35-115(1). The presentence report indicates that the defendant had at least seven prior misdemeanors, including multiple convictions for driving on a suspended, cancelled, or revoked license. There is no requirement in the statute that the previous criminal convictions must be felonies. Defendant also argues that enhancement factor fourteen, "[t]he defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense," was improperly applied because he was not in a position of private trust. T.C.A. § 40-35-115(14). We acknowledge that relationships of private trust can exist between employer and employee, *see State v. Grissom*, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997), and the defendant in this case was employed by the landlord to perform maintenance work on the house that the victim's mother rented. Additionally, the defendant was paying the victim to help clean up while he worked. However, even if the trial court misapplied this enhancement factor, or failed to consider a mitigating factor, it does not invalidate the defendant's within-range sentence. *See Bise*, 380 S.W.3d at 706; *Carter*, 254 S.W.3d at 345. The trial court properly considered at least one other enhancement factor, and the record supports the findings of the trial court. We conclude that the trial court did not abuse its discretion in imposing a sentence in the middle of the range for his conviction.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE